ANDREA T. MARTINEZ, Acting United States Attorney (#9313)
MICHAEL GADD, Special Assistant United States Attorney (#13704)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801)524-5682

---

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRUNA GABRIELY MACHADO, and DIEGO MARTIN FIGUEROA-ESPITTA, aka *CHIVO*,<br><br>Defendants. | **UNITED STATES' POSITION REGARDING DETENTION**<br><br>Case No. 2:22-cr-0025 JNP |

☐ The United States is not seeking detention.

☐ Detention is not at issue because this is an immigration reentry case where the defendant has opted to participate in the fast track program, which includes agreeing to detention for the pendency of this case.

☒ The United States moves for detention based on current information. The United States' positions in this preliminary pleading could change after reviewing the Pretrial Report or learning of additional evidence. The United States reserves the right to assert positions even if the boxes next to those positions are not checked below, raise additional arguments, and file additional pleadings in support of detention. The United States' motion for detention is:

☐ Pursuant to 18 U.S.C. § 3142(f)(1) because defendant is charged with:

☐ **(A)** a crime of violence (*see* 18 U.S.C. § 3156(a)(4)), a violation of 18 U.S.C.

§ 1591 (sex trafficking of children), or an offense under § 2332b(g)(5)(B) (specific enumerated crimes) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☒ **(B)** an offense for which the maximum sentence is life imprisonment or death; **or**

☒ **(C)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(D)** any felony if the defendant has been convicted of two or more offenses described in (a) through (c) above, or two or more State or local offenses that would have been offenses described in (a) through (c) above if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(E)** any felony that is not otherwise a crime of violence but involves: **(i)** a minor victim; **(ii)** the possession or use of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250;

**OR**

☒ Pursuant to 18 U.S.C. § 3142(f)(2) because the case involves:

☒ **(A)** a serious risk the defendant will flee; **or**

☐ **(B)** a serious risk the defendant will obstruct or attempt to obstruct justice, or threaten, injure, intimidate, attempt to threaten, injure or intimidate a prospective witness or juror.

## Procedure

Each defendant may seek a continuance of the detention hearing of up to five days, and the United States may seek a continuance of up to three days. 18 U.S.C. § 3142(f). During any such continuance, the defendant shall be detained. *Id*. The rules concerning the admissibility of evidence do not apply at the detention hearing. *Id*. The United States has the burden of persuasion by clear and convincing evidence that no condition or combination of conditions of release will reasonably the safety of any other person and the community or by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required. *Id*.; *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

## Rebuttable Presumption

☒ A rebuttable presumption applies and the defendant bears the burden to produce some credible evidence to rebut this presumption. The United States acknowledges that it retains the burden of persuasion. The statutory presumption applies:

☐ Pursuant to 18 U.S.C. § 3142(e)(2) *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because:

**(A)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; ***and***

**(B)** the defendant committed that offense while on release pending trial for a Federal, State, or local offense; ***and***

**(C)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for that, whichever is later.

☒ Pursuant to 18 U.S.C. § 3142(e)(3) *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☒ **(A)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(B)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(C)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 or more is prescribed;

☐ **(D)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(E)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

## Factors to Be Considered

The United States may present arguments, proffer evidence, or provide testimony at the scheduled detention hearing supporting the detention of the defendant including, but not limited to:

☒ The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm or destructive device. (18 U.S.C. § 3142(g)(1)).

☒ The weight of evidence against the defendant. (18 U.S.C. § 3142(g)(2)).

☒ The history and characteristics of the defendants including the defendants' character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning court proceedings. (18 U.S.C. § 3142(g)(3)(A)).

☒ Whether, at time of the current offense or arrest, the defendant was on probation, parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law. (18 U.S.C. § 3142(g)(3)(B)).

☒ The nature and seriousness of danger to any person or to the community that would be posed by the defendant's release. (18 U.S.C. § 3142(g)(4)).

☒ The defendants' lack of legal status in the United States. On information and belief, Machado is a citizen of Brazil who has some status in the United States but who will be subject to deportation proceedings upon conviction. Figueroa-Espitta was also believed to have some status in the United States, but the undersigned prosecutor learned that ICE lodged a detainer at the jail for him shortly after his arrest.

☒ How the defendants would be subject to removal or deportation after serving a period of incarceration.

☐ The defendant's significant family or other ties outside of the United States.

☒ The defendants' use of aliases or false documents.

☐ The defendant's prior attempts to evade law enforcement.

☐ How the defendant's proposed residence, employment, or proposed treatment programs have not been verified.

☒ Defendant Machado's prior failures to appear for court proceedings.

Here is a brief summary of the case, which helps to explain why neither defendant should be released on conditions.

**Short statement of the case:**

Beginning in early 2021, agents with the DEA Metro Narcotics Task Force (MNTF) began investigating a methamphetamine distribution organization operating in the Salt Lake Area. Through this investigation, agents were able to identify one of the main subjects of the Drug Trafficking Organization (DTO) as Michael BIXBY of West Valley City, Utah, who facilitates distribution of pound-quantities of methamphetamine within Utah.

**TT-1—Bixby**

On October 27, 2021, the Honorable Judge Jill N. Parrish, United States District Judge, District of Utah, signed an order (#2:21-sc-159), authorizing the interception of wire and electronic communications to and from 801-574-5519 (TT1), a cellular telephone utilized by Michael BIXBY. Interceptions commenced on October 27, 2021; the order expired November 25, 2021.



*Bixby*

During the ongoing T-III intercepts, agents confirmed that BIXBY was in fact purchasing pound-quantities of methamphetamine for re-distribution in West Valley City. This corroborated information from a confidential source (CS). On November 1, 2021, agents conducting surveillance saw BIXBY's source of supply for the first time—a woman later identified as MACHADO.

**BIXBY sells to a re-distributor named Sabey**

During the ongoing T-III intercepts, agents identified a male subject named Bruce Elliott SABEY utilizing 385-295-2766 to speak to the user of TT1, Michael BIXBY. On November 3, 2021, session 477 of TT1, BIXBY asked SABEY if he was home because BIXBY wanted to get something from SABEY. Both agreed that BIXBY would go meet SABEY. In session 488 of TT1, BIXBY advised SABEY that BIXBY would be on his way in just a minute, and for SABEY to make BIXBY "one with 3 and then 1 off to the side." Agents were able to identify BIXBY's

black 1992 Chevrolet truck bearing Utah license plate X962LE departing his residence at 4484 W. Nancy Drive at 2003 hours on November 3, 2021.

In session 494 of TT1, BIXBY stated that he was going there, and had to "bring the rest in twos." Location data for TT1 placed the device near SABEY's residence at 8317 S. Wilson St #1, Midvale, Utah. Later that evening agents observed BIXBY's black 1992 Chevrolet truck return to his residence at 4484 W. Nancy Drive. GPS location data for TT1 revealed that TT1 had also returned to 4484 W. Nancy Drive.

On November 21, 2021, Unified Police Department (UPD) officers obtained a search warrant for SABEY's residence (8317 S. Wilson St #1, Midvale, Utah) and SABEY's vehicles, issued by the State of Utah, warrant #2350641.



*Sabey*

On November 21, 2021, in session 1562 of TT1, agents intercepted Bruce Elliott SABEY in a short conversation, in which SABEY asked BIXBY if SABEY could come over, and BIXBY replied "yes." Per past interceptions, when SABEY and BIXBY agreed to meet in such a manner, it is to transfer drugs, typically from BIXBY to SABEY.

DEA agents relayed this information to UPD officers, who established surveillance at SABEY's residence at 8317 S. Wilson St #1, Midvale, Utah and observed that SABEY's GMC pickup was not at the residence. At approximately 2245 hours, officers observed SABEY returning to his neighborhood, and conducted a traffic stop on the truck. Officers identified and detained SABEY, and his daughter, Ashley SABEY. Officers executed the search warrant on the truck and located approximately two ounces of methamphetamine inside SABEY's vehicle.

Officers executed the search warrant at SABEY's residence and seized additional methamphetamine and drug paraphernalia. UPD is planning to screen SABEY for state charges.

Throughout the intercept period, agents conducted extensive surveillance and observed frequent short-stay traffic at 4484 W. Nancy Drive, indicative of drug sales

being conducted out of the residence. Additionally, agents previously purchased methamphetamine from BIXBY at 4484 W. Nancy Drive on several occasions in 2021 using a CS. Per the CS, BIXBY had methamphetamine stored in out-buildings; he also stored a safe and drug proceeds inside the residence.

During the week of December 12, 2021, agents received information from a CS that BIXBY had recently obtained pound-quantities of methamphetamine.

**Warrant and post-arrest confession of BIXBY**




*Bixby's Outbuilding (outside and inside)*

On December 16, 2021, agents executed a federal warrant on Bixby's residence in West Valley. Agents seized approximately two pounds of methamphetamine and $8,810 in US currency.




*Methamphetamine among the tools*




*Half of the seized drug proceeds*

Bixby claimed that the methamphetamine at his residence was from an unrelated source of supply. BIXBY stated that for the past 5-6 months he had also obtained methamphetamine from a female subject he knew as “Bruna” and her live-in boyfriend or husband. BIXBY could not remember the name of the husband but recognized “Chivo” when Special Agent Smith mentioned the name.

BIXBY stated that he had obtained 8-16 ounces of methamphetamine every week or every other week. BIXBY admitted to obtaining methamphetamine from “Bruna” in excess of 20 times. BIXBY claimed that Bruna’s husband Chivo was the “boss” along with Chivo’s brother, and that Chivo forces Bruna to make the deliveries.

**TT-2—Bruna**

On December 2, 2021, the Honorable Judge Robert Shelby, United States District Judge, District of Utah, signed an order (#2:21-sc-170), authorizing the interception for all wire and electronic communications to and from 801-783-8639 (TT2), a cellular telephone believed to have been utilized by Erica SOARES. Interceptions commenced on December 2, 2021; the order expired on December 31, 2021.

During the course of the investigation, agents determined that TT2 was in fact being used by Erica SOARES’ daughter, Bruna MACHADO, and that MACHADO

resided with her drug-dealer associate—"Chivo" —in North Salt Lake, Utah.





*Machado and Figueroa-Espitta*

On December 13, 2021, during the ongoing T-III intercepts, agents intercepted MACHADO over TT2, session 1184 at 1751 hours, speaking with Michael BIXBY. MACHADO asked BIXBY if he needed anything, to which BIXBY replied yes. BIXBY stated that he could take as much as she could bring him, "5 or 1 or even half." MACHADO stated that she would call "Chivo" because she didn't know if Chivo had brought any or not.

In session 1185 of TT2, MACHADO contacted "Chivo" who utilizes 385-775-1526. In this call, MACHADO informed "Chivo" that "Mike" needed some. Chivo informed MACHADO that he had "six." MACHADO told Chivo to get "five" ready and she would take it. In session 1187 MACHADO received a text message in Spanish from Chivo that stated "Yes, there are 5."

Agents established surveillance on MACHADO's residence. At approximately 1835 hours, agents observed MACHADO arrive at 1865 Independence Blvd, North Salt Lake, Utah in the **SUBJECT VEHICLE**. She met with a heavy-set Hispanic male subject near her car briefly, and both then went into the back patio entrance of Apartment

F.

In session 1197 of TT2, agents intercepted MACHADO speaking to BIXBY again. In this call, MACHADO advised BIXBY that she "has the 5" and that she could do the 5 for "1200." BIXBY agreed and asked if she could bring it over; it was also mentioned that BIXBY would get a pound next time. MACHADO said that she would have Chivo take it. BIXBY advised that Chivo needed to walk through the carport to the back door of BIXBY's residence.

At approximately 2000 hours, agents observed a heavy-set Hispanic male subject exit Apartment F and walk to the mailboxes, then back to the apartment. At approximately 2025 hours, agents observed the MACHADO and Chivo's vehicle departing the parking lot of the apartments. Agents conducted electronic surveillance and physical surveillance and observed Chivo travel south through the neighborhood to I-215 southbound, to Highway 201 westbound, and onto Bangerter Highway. Agents arranged to have West Valley City Police Department (WVCPD) officers conduct a traffic stop on the silver Pilot at 4000 West 3500 South.

**Traffic Stop and seizure of methamphetamine**

Officers conducted a traffic stop of the vehicle and identified a heavy-set Hispanic male subject as the driver and lone occupant. Officers removed the driver from the vehicle in order to conduct a drug-detecting canine sniff of the vehicle. "Chivo" stated his name was Diego Esipitia Figueroa, DOB 10/1/1983. An Immigration and Customs Enforcement (ICE) Agent arrived on scene and fingerprinted "Chivo," which revealed that his correct name per immigration databases is Diego Martin FIGUEROA-ESPITTA.



*Chivo stopped in route to Bixby with Methamphetamine*

Officers received a canine alert on the vehicle and began searching the interior. Officers located a small amount of methamphetamine inside the center-console of the vehicle and a larger amount of five individually wrapped bags inside a saltine cracker box in the front of the vehicle. One of the WVCPD officers secured the drugs in his police vehicle. In total, Chivo was in possession of approximately five ounces of methamphetamine.



*Methamphetamine from the cracker box*

Officers allowed FIGUEROA-ESPITTA to use his phone and he called TT2 and contacted MACHADO in session 1222. In this lengthy call, FIGUEROA-ESPITTA informed MACHADO that he had been stopped by the police and that they were searching his vehicle. MACHADO reacted in a frantic manner and exclaimed that the police had no right to search the car. MACHADO demanded that FIGUEROA-ESPITTA tell the police to stop searching the vehicle. In sessions 1225 and 1231 MACHADO attempted to call FIGUEROA-ESPITTA back. In session 1238 MACHADO contacted BIXBY, and informed BIXBY of FIGUEROA-ESPITTA's arrest. BIXBY advised that the police must have been watching FIGUEROA-ESPITTA.

FIGUEROA-ESPITTA's person was searched and officers located a glass pipe and a small amount of methamphetamine in a baggie. Officers released FIGUEROA-ESPITTA and the vehicle at the conclusion of the stop.

In session 1239, 1240 and 1242, agents intercepted FIGUEROA-ESPITTA calling MACHADO. In this call, FIGUEROA-ESPITTA advised that the police had released him, but had taken all of "it." MACHADO stated that it did not make sense that the police would have taken all the "shit" and not have arrested him.

In session 1249, MACHADO advised BIXBY that FIGUEROA-ESPITTA had been released. BIXBY asked if the cops had found the "product" and MACHADO

advised that yes, they had, but had released FIGUEROA-ESPITTA, and pondered why that would happen. BIXBY stated that it was because they [MACHADO and FIGUEROA-ESPITTA] were under investigation. MACHADO stated that she would have to take it easy for a while.

BIXBY and MACHADO remained in contact through the end of December 2021, but MACHADO and FIGUEROA-ESPITTA did not deliver any additional drugs to BIXBY.

**Search Warrant and post-arrest confession of MACHADO and FIGUEROA-ESPITTA**

On January 3, 2022, agents executed a federal warrant at the North Salt Lake residence of MACHADO and FIGUEROA-ESPITTA. Agents found a small amount of methamphetamine in MACHADO and FIGUEROA-ESPITTA's vehicle.

Post-arrest, MACHADO and FIGUEROA-ESPITTA told agents that their source of supply was "Grande." FIGUEROA-ESPITTA usually dealt with Grande, but recently Grande had been calling MACHADO to see if MACHADO and FIGUEROA-ESPITTA were ready to resume accepting loads of methamphetamine. MACHADO and FIGUEROA-ESPITTA explained they had been purchasing between one and two pounds of methamphetamine each week from Grande for the last seven months. They also admitted to distributing Methamphetamine to BIXBY every week or two for the preceding several months.

MACHADO and FIGUEROA-ESPITTA agreed to continue to work with agents and were released at the scene. After only a few days, MACHADO and FIGUEROA-ESPITTA broke off contact with their controlling agents.

**Ongoing criminal conduct**

While preparing to present this case to the Grand Jury, agents noticed the vehicle used by MACHADO and FIGUEROA-ESPITTA began to show travel patterns consistent with the travel patterns seen during the investigation. Agents arranged for a detective from UPD to stop the vehicle on January 20, 2022. MACHADO was driving. MACHADO gave the detective a false name—she claimed to be her mother, Erica

Soares. The detective called her bluff; eventually MACHADO admitted her true identity. A canine alerted to the presence of drugs in MACHADO's vehicle. Detectives located methamphetamine in a white purse inside the vehicle. MACHADO claimed the methamphetamine and made excuses for it.

**Victim Notification**

☐ The United States has notified any identified victim, or attempted to do so, pursuant to 18 U.S.C. § 3771.

The position of the victim(s) on the detention of the defendant is: n/a

☐ The victim(s) in this matter seek(s) a no contact order.

☒ This matter does not involve a victim requiring notification.

DATED this 27th day of January, 2022.

*/s/ Michael Gadd*
MICHAEL GADD
Special Assistant United States Attorney